# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANLEY V. GRAFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 6748 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| LESLIE HINDMAN AUCTIONEERS, INC., | ) |
| BILTMORE LOAN AND JEWELRY | ) |
| SCOTTSDALE LLC, THE OWINGS | ) |
| GALLERY, INC., NATHANIEL O. OWINGS, | ) |
| RAY HARVEY, ZAPLIN-LAMPERT | ) |
| GALLERY, INC., and JIM PARKS, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Stanley V. Graff brings this suit to recover three paintings that his wife pawned to Defendant Biltmore Loan and Jewelry Scottsdale LLC ("Biltmore"), and of which Biltmore then sold two at auction after Graff's wife defaulted on her loan. In his second amended complaint, Graff brings claims against Leslie Hindman Auctioneers, Inc. ("Leslie Hindman"), Biltmore, and The Owings Gallery, Inc. (the "Owings Gallery"), Nathaniel O. Owings, Ray Harvey, Zaplin-Lampert Gallery, Inc., and Jim Parks (collectively, the "Owings Defendants"). He alleges claims for conversion, unjust enrichment, replevin, detinue, promissory estoppel, promissory fraud, and civil conspiracy. Biltmore moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, to transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). The Court agrees that Graff has not sufficiently established Biltmore's contacts with Illinois to subject it to jurisdiction in this Court with respect to the claims Graff brings against it. Leslie Hindman and the Owings Defendants also move to dismiss the claims against them pursuant to Federal Rule of

Civil Procedure 12(b)(6). Because Graff has not sufficiently pleaded that the paintings are his separate property, and Texas law only allows him to seek recovery from his wife for disposition of community property, and not against third parties, the Court dismisses the claims against Leslie Hindman and the Owings Defendants, disposing of the entirety of the second amended complaint.

## BACKGROUND[1]

Graff, who lives in Dallas, Texas, owned three pieces of Western American art. First, on May 18, 2002, he purchased *Taos Indians and the Sangre de Cristos*, an oil painting by Oscar Edmund Berninghaus (the "Berninghaus painting"). On May 13, 2006, he purchased *Snow Capped Mountains*, also referred to as *Meadow with Cattle*, an oil painting by William Victor Higgins (the "Higgins painting"). On July 29, 2009, he purchased *By the Light of the Moon*, an oil painting by Frank B. Hoffman (the "Hoffman painting"). Graff claims to have been the sole owner of these paintings, with them remaining his separate property since the date of purchase.

On September 28, 2003, Graff married Deborah Graff. In January 2013, Deborah filed for divorce in Dallas, Texas. The Dallas County District Courts have a standing order applicable to all divorce proceedings, which provides that, during the pendency of the suit, both parties to the proceeding are to refrain from "[s]elling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of either party, whether personal property

---

[1] The facts in the background section are taken from Graff's second amended complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the second amended complaint and central to Graff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997). In considering Biltmore's motion to dismiss for personal jurisdiction, the Court also considers the declarations and additional evidence submitted by Biltmore and Graff. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

2

or real property, and whether separate or community, except as specifically authorized by this order." Doc. 81 at 43. But while the divorce proceeding was ongoing, Deborah took the Berninghaus, Higgins, and Hoffman paintings from the Graffs' marital home in Dallas without Graff's permission and pawned them to Biltmore, located in Arizona. She thereafter defaulted on her loan.

Once Deborah defaulted, Biltmore contracted with Leslie Hindman, located in Chicago, Illinois, to sell the three paintings at auction. Biltmore sent the three paintings to Chicago, and Leslie Hindman received them around September 25, 2015. At the Leslie Hindman-organized auction, Biltmore sold the Berninghaus painting to an individual living in Dallas, Texas. Biltmore also sold the Higgins painting to the Owings Defendants. Owings organized this group to purchase the Higgins painting at the auction. The Hoffman painting did not sell at the auction and currently remains in Biltmore's possession.

Shortly after the auction, in November 2015, Graff learned for the first time that Deborah had removed the Higgins painting from his home and that the Owings Defendants had it in their possession. He learned of this by searching Leslie Hindman's sale records after he found out that Leslie Hindman had auctioned off the Berninghaus painting. Graff also discovered that the Hoffman painting had not sold during auction. Graff then called Harvey for advice and help locating a lawyer to aid in getting back his three paintings. Graff did not know that Harvey belonged to the group that had purchased the Higgins painting, but Harvey realized this when speaking to Graff. Harvey informed Graff the next day and told him that he could not help Graff and that he had spoken to Owings, who told Harvey that the Owings Defendants had title to the Higgins painting, which would be sold. Graff then contacted Owings, telling him that the Higgins painting had been wrongly taken from him and that he wanted it back. Owings

indicated that he still had the Higgins painting, he would not sell it, and he would contact Leslie Hindman about it. But despite this conversation, the Owings Defendants sold the Higgins painting. The sale has since been reversed, and the Owings Gallery has possession of the Higgins painting. *See* Doc. 48.

Graff has regained possession of the Berninghaus painting. He has demanded the return of the Higgins painting from the Owings Defendants and the Hoffman painting from the Biltmore. But these Defendants have refused to return these two paintings to Graff.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue Research Found.*, 338 F.3d at 782. If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Personal Jurisdiction over Biltmore

First, the Court addresses Biltmore's argument that the Court does not have personal jurisdiction over Graff's claims against it. In diversity cases, such as this one, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Where the federal constitutional and Illinois statutory inquiries diverge, "the Illinois constitutional standard is likely more restrictive than its federal counterpart," but both essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable and thus a single inquiry suffices. *Id.*; *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities*

*Redevelopment Auth.*, No. 1:12-cv-08759, 2013 WL 5926062, at *2 (N.D. Ill. Nov. 5, 2013) ("In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* [*v. Elwood*, 565 N.E.2d 1302, 1315, 141 Ill. 2d 244, 152 Ill. Dec. 384 (1990)] guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice."). In order to satisfy the Due Process Clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1984).

Personal jurisdiction comes in two forms: general and specific. The Court need not address general jurisdiction because Graff only claims that the Court has specific jurisdiction over Biltmore. Specific jurisdiction exists "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). The Court looks to the "defendant's suit-related conduct" and its connection to the forum state; "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 283, 286, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014); *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 915–16 (7th Cir. 2015). For tort claims, like those Graff asserts here, the Court considers "whether the conduct underlying the claims was purposely directed at the forum state," looking at whether Biltmore engaged in

6

"(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 702–03.

The relevant jurisdictional facts are as follows: Biltmore, located in Scottsdale, Arizona, buys or lends money on jewelry, diamonds, art, and other valuables. It, along with a related business, Biltmore Loan and Jewelry-Chandler, LLC, maintains websites at www.biltmoreloanandjewelry.com and www.biltmoreloan.com. Biltmore's website states that its service areas are all in Arizona, specifically, Mesa, Phoenix, Scottsdale, Tempe, and Chandler. To enter into a pawn transaction with Biltmore, a customer must appear in person at Biltmore's Scottsdale or Chandler location. As relevant to this case, Deborah learned of Biltmore through one of Biltmore's associates in Dallas. After Deborah made initial contact with Biltmore, David Goldstein, one of Biltmore's members, flew to Dallas and inspected the three paintings at issue. Deborah then flew to Scottsdale with the paintings and entered into two transactions with Biltmore on October 31, 2014 and December 16, 2014. The pawn tickets Deborah signed, which list the paintings at issue in this case as pledged goods, state:

> All information in this report is complete and accurate. I am the owner of the goods described in this report or I am authorized to enter into this pawn or sale transaction on behalf of the owner of the goods described in this report.

Doc. 49-1 at 9.

After Deborah defaulted on her loans from Biltmore, Biltmore arranged with Leslie Hindman, based in Chicago, to auction the paintings. Specifically, Marc Israel, Biltmore's manager of business operations, worked with Leslie Hindman's Zachary Wirsum and entered into a consignment agreement dated April 28, 2015. The consignment agreement provides that Leslie Hindman would act as Biltmore's agent to sell the paintings. Pursuant to the consignment

7

agreement, Biltmore agreed to submit to the jurisdiction of Illinois courts "for any suit or proceeding seeking equitable or injunctive relief arising from [the] agreement." Doc. 49-1 at 21. Israel communicated with Wirsum by phone and email from Arizona, with the knowledge that Wirsum was located in Illinois. Biltmore then sent the paintings to Leslie Hindman in Chicago by UPS. No one from Biltmore attended the auctions of the paintings.

Biltmore argues that Graff's claims against it have no significant relation with Illinois, focusing on the fact that Deborah took the paintings from Graff in Texas and pawned them to Biltmore in Arizona. Biltmore therefore argues that to the extent any conversion took place, it occurred before the paintings reached Leslie Hindman for the auction in Illinois. Biltmore also contends that Graff's claims of unjust enrichment, replevin, and detinue do not amount to separate claims but rather are remedies, with the wrongful conduct for which Graff seeks these remedies again not occurring in Illinois but rather in Texas or Arizona.[2] Graff responds that the conduct underlying his claims took place in Illinois, focusing on the fact that Biltmore sold the paintings through Leslie Hindman at auction. Graff also points to Biltmore's contacts with Leslie Hindman in Illinois to support jurisdiction because under Illinois law, "an agent's contacts with a state may be attributed to the principal for purposes of establishing personal jurisdiction." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008).

---

[2] The Court notes that Illinois law recognizes unjust enrichment as a separate claim. *See Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) ("The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action."). Biltmore instead relies on Texas law to argue that Graff's claims should instead be viewed as remedies, not separate claims. *See Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 709 n.4 (Tex. App. 2006) ("Unjust enrichment, however, is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."). The Court need not determine which state's law applies to these claims here, however, because regardless of how Graff's claims are characterized, the contacts with Illinois related to these claims or remedies remain the same.

8

Although the issue is a close one, the Court does not find it has jurisdiction over Biltmore with respect to Graff's claims against it. To state a claim for conversion, Graff must establish (1) a right to the property at issue; (2) a right to the immediate possession of property; (3) a demand for possession; and (4) that Biltmore wrongfully and without authorization assumed control, dominion, or ownership over the property. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016) (Illinois law); *see also Koss Corp. v. Am. Exp. Co.*, 309 P.3d 898, 914 (Ariz. Ct. App. 2013); *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684–85 (Tx. App. 2018). Here, Graff's injury took place in Arizona, where Biltmore exercised dominion and control over the paintings. *See Charash v. Oberlin Coll.*, 14 F.3d 291, 297 (6th Cir. 1994) (place of injury for purposes of conversion claim is where the defendant exercises dominion over the property). Even taking into account the fact that Biltmore later sold two of the paintings at an auction in Illinois, which is where Graff claims the injury occurred,[3] Graff resides in Texas, not in Illinois, and nothing suggests that Biltmore knew that Graff would potentially be injured in Illinois when it took possession of the paintings or, even under Graff's theory, when it sold the paintings through an auction held in Illinois. *See Sunny Handicraft (H.K.) Ltd. v. Edwards*, No. 16 C 4025, 2017 WL 1049842, at *6 (N.D. Ill. Mar. 20, 2017) (finding that plaintiffs could not establish personal jurisdiction for tort claims where no evidence existed that defendants had knowledge that plaintiffs would be injured in Illinois). Indeed, the purchasers of the two sold paintings did not reside in Illinois, with Illinois instead only the location of a prominent auction house Biltmore decided to use to sell the paintings. And Graff's argument of injury in Illinois

---

[3] Graff cites no case law to support his argument that the Court should treat Illinois as the place of injury for the conversion claims. The last act needed to support the conversion claims against Biltmore—taking control over the property—occurred in Arizona, not Illinois, and so the Court does not find support for Graff's argument. *See First Union Nat'l Bank v. N.Y. Life Ins. & Annuity Corp.*, 152 F. Supp. 2d 850, 854 (D. Md. 2001) (concluding that the misappropriation of property is the last act for purposes of a conversion claim).

9

rings especially hollow because one of the paintings did not sell at auction and instead was returned to Biltmore in Arizona, meaning that Graff's argument for personal jurisdiction over the conversion claim for that painting fails. Therefore, because the conversion at issue occurred prior to the auction that took place in Illinois, any connections between Biltmore and Leslie Hindman related to the subsequent auction of the paintings do not aid Graff in establishing personal jurisdiction over Biltmore for the conversion claims. His conversion claims therefore cannot proceed in this Court.

Similarly, the Court does not find that Biltmore has sufficient contacts with Illinois with respect to Graff's other claims against it to subject Biltmore to personal jurisdiction on those claims.[4] The underlying conduct—Biltmore's receipt of the paintings from Deborah in Arizona and its subsequent assumption of possession of those paintings once she defaulted on her loans from Biltmore—has no connection to Illinois. And although Graff argues that Biltmore received a tangible benefit by selling two of the paintings in Illinois,[5] Graff again has not established that Biltmore had any knowledge that these sales would harm him in Illinois, nor does the evidence support such a conclusion since Graff resides in Texas and has no apparent connection to Illinois himself. *See id.* Therefore, the Court dismisses Graff's claims against Biltmore for lack of personal jurisdiction.[6]

---

[4] Indeed, Graff does not even address whether he has established personal jurisdiction with respect to his claims for replevin and detinue for the recovery of the Hoffman painting, which Biltmore attempted but failed to sell at auction. These claims have even less of a connection to Illinois, where Graff seeks the return of the painting, which Biltmore has in its possession in Arizona.

[5] Again, Graff cannot point to any contacts that tie Biltmore to Illinois with respect to his unjust enrichment claim for the unsold Hoffman painting.

[6] Because the Court dismisses Graff's claims against Biltmore for lack of personal jurisdiction, it does not address Biltmore's alternative motion to transfer venue.

10

**II.     Sufficiency of the Claims against Leslie Hindman and the Owings Defendants**

All of Graff's claims rely on his allegation that the paintings were his separate property. Leslie Hindman and the Owings Defendants argue, however, that this allegation is merely an unsupported legal conclusion and that, under Texas law, the paintings are presumed to be community property. Treating the paintings as community property, these Defendants contend that Graff may not maintain any of his claims against them. Graff does not dispute that Texas law governs the characterization of the paintings as either separate or community property. *See* Doc. 62 at 9 n.2. Instead, he contends that he has properly pleaded that the paintings constitute separate property and that the Court should not apply any presumptions concerning their treatment as community property at the pleading stage.

Under Texas law, "[c]ommunity property consists of the property, other than separate property, acquired by either spouse during marriage." Tex. Fam. Code Ann. § 3.002. Separate property consists of: "(1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage." Tex. Fam. Code Ann. § 3.001. Graff pleads that he purchased the Berninghaus painting before his marriage but the Higgins and Hoffman paintings while married to Deborah. He does not include any facts to suggest that the Higgins and Hoffman paintings meet the definition of separate property under § 3.001. Additionally, "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." Tex. Fam. Code Ann. § 3.003(a). Despite pleading in conclusory fashion that all the paintings were his own separate property, Graff also acknowledges that during the divorce proceedings, Deborah had possession of the three paintings, taking them from their

11

marital home in Dallas and pawning them to Biltmore. This then gives rise to the presumption that all three, including the Berninghaus painting purchased prior to Graff and Deborah's marriage, were community property. Graff's second amended complaint fails to overcome this presumption with his pleading of the bare legal conclusion that he was the "sole owner" of the paintings. Doc. 47 ¶¶ 18–20; *see McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."). And the Court does not find any support for Graff's argument that it cannot take into account the presumptions regarding community property in deciding these motions to dismiss.[7] *See Corder v. BBG Comm'ns, Inc.*, No. W-11-CA-00264, 2012 WL 3843714, at *2 (W.D. Tex. July 30, 2012) (applying community property presumption to find plaintiff had standing at the motion to dismiss stage); *In re Douglass*, No. 04-12499-CAG, 2008 WL 2944568, at *5–6 (Bankr. W.D. Tex. July 25, 2008) (considering community property presumption in deciding motion to dismiss); *Archer v. Chisholm*, 870 F.3d 603, 614 (7th Cir. 2017) (finding that plaintiff did not present allegations in complaint to rebut Wisconsin's presumption of regularity that attaches to state judicial officers' actions); *Denson v. Vill. of Johnsburg*, No. 17 CV 50180, 2018 WL 372146, at *3 (N.D. Ill. Jan. 11, 2018) (requiring plaintiff to allege sufficient facts to overcome the presumption of rationality to survive a motion to dismiss an equal protection class-of-one claim).

Because Graff's second amended complaint does not adequately allege that the three paintings should be treated as separate property, instead requiring the Court to treat them as

---

[7] Graff cites to cases refusing to apply the ERISA presumption of prudence at the motion to dismiss stage. *See* Doc. 62 at 10–11 (collecting cases from the Western District of Tennessee, District of Minnesota, and Eastern District of Texas). Although the Supreme Court abrogated the presumption of prudence in *Fifth Third Bancorp v. Dudenhoeffer*, --- U.S. ----, 134 S. Ct. 2459, 189 L. Ed. 2d 457 (2014), prior to doing so, the Fifth Circuit had issued an opinion "join[ing] the Second, Third, Seventh, and Eleventh Circuits in holding the presumption of prudence applies at the motion to dismiss stage." *Kopp v. Klein*, 722 F.3d 327, 339 (5th Cir. 2013), *vacated*, 134 S. Ct. 2900 (2014).

community property, the Court finds that all of Graff's claims fail.  Texas does not allow claims against third parties for actions taken by one spouse with respect to community property.  *See Chu v. Hong*, 249 S.W.3d 441, 445 (Tex. 2008) (holding that a third party cannot be held liable in tort when community property is taken by one of the spouses, citing *Cohrs v. Scott*, 338 S.W.2d 127, 133 (Tex. 1960)); *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998) ("[N]o independent cause of action exists in Texas to recover separate damages when the wrongful act defrauded the community estate.").  Instead, under Texas law, issues related to community property and any fraudulent transfers are addressed through the just and right division of community property in divorce proceedings.  *See Chu*, 249 S.W.3d at 444–45; *Schlueter*, 975 S.W.2d at 588–89.  Although Graff correctly notes that he could pursue an independent tort to recover separate property, *Schlueter*, 975 S.W.2d at 588, because he has not properly alleged that the paintings should be considered separate property, he cannot do so against the third parties he has named in the second amended complaint at this time.  Treating the paintings as community property instead, Graff's claims against Leslie Hindman and the Owings Defendants fail at this time.

## CONCLUSION

For the foregoing reasons, the Court grants Biltmore's motion to dismiss [49], denies Biltmore's motion to transfer venue [49] as moot, and grants Leslie Hindman and the Owings Defendants' motions to dismiss [52, 55].  The Court dismisses the second amended complaint without prejudice.

Dated: September 19, 2018

_____
SARA L. ELLIS
United States District Judge