UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY V. GRAFF, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 17 C 6748 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| LESLIE HINDMAN AUCTIONEERS, INC., THE OWINGS GALLERY, INC., NATHANIEL O. OWINGS, RAY HARVEY, ZAPLIN-LAMPERT GALLERY, INC., and JIM PARKS, | ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Stanley V. Graff brings this suit to recover paintings that his wife pawned to Biltmore Loan and Jewelry Scottsdale LLC ("Biltmore"), and of which Biltmore then sold two at auction after Graff's wife defaulted on her loan.[1] In his third amended complaint, Graff brings claims against Leslie Hindman Auctioneers, Inc. ("Leslie Hindman"), and The Owings Gallery, Inc., Nathaniel O. Owings, Ray Harvey, Zaplin-Lampert Gallery, Inc., and Jim Parks (collectively, the "Owings Defendants"). He alleges claims for conversion, unjust enrichment, replevin, detinue, promissory estoppel, promissory fraud, and civil conspiracy. The Court previously dismissed Graff's claims against Leslie Hindman and the Owings Defendants, concluding that Graff had not sufficiently pleaded that the paintings are his separate property and that Texas law only allows him to seek recovery from his wife, and not third parties, for the disposition of community property. Doc. 86 at 11–13. The Court then allowed Graff to file a third amended complaint, finding that it included sufficient allegations to potentially overcome

---
[1] The Court previously determined it did not have personal jurisdiction over Biltmore, *see* Doc. 86 at 5–10, and transferred Graff's claims against Biltmore to the District of Arizona pursuant to 28 U.S.C. § 1404, *see* Doc. 97 at 3–5.

the community property presumption with respect to two of the paintings. Doc. 97 at 3. Leslie Hindman and the Owings Defendants again move to dismiss the claims against them in the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] The Court finds it appropriate to allow all but Graff's unjust enrichment and promissory fraud claims to proceed, with Leslie Hindman and the Owings Defendants' arguments better suited to decision after the parties have engaged in discovery.

## BACKGROUND[3]

Graff, who lives in Dallas, Texas, owned three pieces of Western American art. First, on May 18, 2002, he purchased *Taos Indians and the Sangre de Cristos*, an oil painting by Oscar Edmund Berninghaus (the "Berninghaus painting") using his own funds. On May 13, 2006, he purchased *Snow Capped Mountains*, also referred to as *Meadow with Cattle*, an oil painting by William Victor Higgins (the "Higgins painting"). He purchased the Higgins painting with funds from a liquidating distribution from ABRES, Ltd., in which he had acquired an equity interest in 2001. On July 29, 2009, he purchased *By the Light of the Moon*, an oil painting by Frank B. Hoffman (the "Hoffman painting"). Graff was the sole owner of these paintings, which remained his separate property since their purchase. Autumn V. Kraus, a certified public accountant, traced the Berninghaus and Higgins paintings to Graff's separate property.

On September 28, 2003, Graff married Deborah Graff. In January 2013, Deborah filed for divorce in Dallas, Texas. The Dallas County Family District Court has a standing order

---

[2] After Leslie Hindman filed its motion to dismiss, Graff agreed to voluntarily dismiss its claim for conversion of the Hoffman painting against Leslie Hindman (Count IX) with prejudice. Doc. 108.

[3] The facts in the background section are taken from Graff's third amended complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Leslie Hindman and the Owings Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

applicable to all divorce proceedings, which provides that, during the pendency of the suit, both parties to the proceeding are to refrain from "[s]elling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of either party, whether personal property or real property, and whether separate or community, except as specifically authorized by this order." Doc. 106-1 at 2. But during the pendency of the divorce proceeding, Deborah took the Berninghaus, Higgins, and Hoffman paintings from the Graffs' marital home in Dallas without Graff's permission and pawned them to Biltmore. She thereafter defaulted on her loan.

Once Deborah defaulted, Biltmore contracted with Leslie Hindman, located in Chicago, Illinois, to sell the three paintings at auction. Biltmore sent the three paintings to Chicago, and Leslie Hindman received them around September 25, 2015. At the Leslie Hindman-organized auction, Biltmore sold the Berninghaus painting to an individual living in Dallas, Texas. Biltmore also sold the Higgins painting to the Owings Defendants. Owings organized this group to purchase the Higgins painting at the auction. The Hoffman painting did not sell at the auction and currently remains in Biltmore's possession.

Shortly after the auction, in November 2015, Graff learned for the first time that Deborah had removed the Higgins painting from their home and that the Owings Defendants had it in their possession. He learned of this by searching Leslie Hindman's sale records after he found out that Leslie Hindman had auctioned off the Berninghaus painting. Graff then called Harvey for advice and help locating a lawyer to aid in returning his three paintings. Graff did not know that Harvey belonged to the group that had purchased the Higgins painting, but Harvey realized this when speaking to Graff. Harvey informed Graff of this the next day. He told Graff that he could not help Graff and that he had spoken to Owings, who told Harvey that the Owings

Defendants had title to the Higgins painting, which would be sold. Graff then contacted Owings, telling him that the Higgins painting had been wrongly taken from him and that he wanted it back. Owings indicated that he still had the Higgins painting, he would not sell it, and he would contact Leslie Hindman about it. But despite this conversation, the Owings Defendants sold the Higgins painting. The sale has since been reversed, and the Owings Gallery has possession of the Higgins painting. *See* Doc. 48.

Graff has regained possession of the Berninghaus painting. He has demanded the return of the Higgins painting from the Owings Defendants and the Hoffman painting from Biltmore. The Owings Defendants have refused to return the Higgins painting to Graff. In connection with the divorce proceedings between Graff and Deborah, the divorce court in Dallas County, Texas characterized all three paintings as Graff's separate property.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

ANALYSIS

In this round of briefing concerning Graff's pleadings, Leslie Hindman and the Owings Defendants do not challenge Graff's allegations that the two paintings at issue were his separate property but rather argue that, even so, his claims still fail against them. First, Leslie Hindman and the Owings Defendants contend that, because the divorce court provided Graff with relief for Deborah's actions, he cannot now pursue a second recovery for the same actions in this separate case. They also argue that Graff cannot allege wrongful possession, which underlies many of his claims, because they were good faith purchasers of the Higgins painting. Finally, the Owings Defendants claim that Graff has not sufficiently alleged the elements of his claims for unjust enrichment, promissory estoppel, and promissory fraud.[4]

## I. Double Recovery

First, both Leslie Hindman and the Owings Defendants argue that the Court should dismiss the third amended complaint because Graff cannot recover a second time for the improper dissipation of his assets. They argue that because Graff's divorce proceedings are final and Graff alleges that the divorce court treated the three paintings as his separate property, Graff has already obtained recovery for any improper dissipation of that separate property. *See Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex. 1993) ("[A] spouse should not be allowed to recover tort damages and a disproportionate division of the community estate based on the same conduct."). Graff responds that he seeks the recovery of the painting themselves, relief that the divorce court could not provide to him. Although the considerations surrounding double

---

[4] "As a federal court sitting in diversity, [the Court applies] state substantive law and federal procedural law." *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). The parties have not raised choice of law issues or pointed out any material differences between the substantive laws of Illinois, Texas, Arizona, or New Mexico, the four states with some connection to the case, and so the Court will "apply the substantive law of Illinois, the forum state," except with respect to the treatment of the paintings under Texas marital property law. *Id.* The Court includes parallel citations where relevant.

5

recovery may come into play at a later stage of this case, without additional information about the divorce proceedings and final division of assets, the Court cannot definitively conclude at the pleadings stage that Graff cannot recover from Leslie Hindman or the Owings Defendants so as to warrant dismissal of the case.

## II. Application of Texas Family Law to Graff's Claims

Leslie Hindman and the Owings Defendants argue that Texas family law's sole management presumption and attendant good faith purchaser defense bar Graff's claims for replevin, detinue, conversion, conspiracy to convert, and unjust enrichment.[5] Texas Family Code § 3.104, titled "Protection of Third Persons," provides:

> (a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in that spouse's name, as shown by muniment, contract, deposit of funds, or other evidence of ownership, or if it is in that spouse's possession and is not subject to such evidence of ownership.
>
> (b) A third person dealing with a spouse is entitled to rely, as against the other spouse or anyone claiming from that spouse, on that spouse's authority to deal with the property if:
>
> (1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and
>
> (2) the person dealing with the spouse:
>
> (A) is not a party to a fraud on the other spouse or another person; and
>
> (B) does not have actual or constructive notice of the spouse's lack of authority.

---

[5] The Court questions whether it is appropriate to consider this presumption and defense at the motion to dismiss stage. Although the Court previously considered the community property presumption in deciding whether Graff adequately pleaded that the paintings were his separate property, *see* Doc. 86 at 11–13, the good faith purchaser defense is typically understood as an affirmative defense not appropriate for resolution at the motion to dismiss stage, *see Wilbourn v. Advantage Fin. Partners, LLC*, No. 09-CV-2068, 2010 WL 1194950, at *5 n.9 (N.D. Ill. Mar. 22, 2010) (bona fide purchaser defense is an affirmative defense not relevant to the court's consideration of a Rule 12(b)(6) motion); *Dynamic Prod., Inc. v. CIMA Energy Ltd.*, No. 4:17-CV-01032, 2018 WL 1801193, at *6 (S.D. Tex. Feb. 21, 2018) (good faith purchaser defense against conversion claim is an affirmative defense).

Tex. Fam. Code Ann. § 3.104. Leslie Hindman and the Owings Defendants argue that this provides them with a defense to all of Graff's claims because Biltmore, to whom Deborah pawned the paintings, relied on Deborah's authority to deal with the paintings and did not have actual or constructive notice of her lack of authority. Graff disagrees that § 3.104 applies, arguing instead that, because he has pleaded the paintings were his separate property, they were in his sole management and control. *See* Tex. Fam. Code Ann. § 3.101 ("Each spouse has the sole management, control, and disposition of that spouse's separate property."). The characterization of the paintings as separate property, according to Graff, means Leslie Hindman and the Owings Defendants wrongfully possessed the paintings because Deborah had no right to transfer them. *See White v. Kenneth Warren & Son, Ltd.*, No. 99 C 1740, 2000 WL 91920, at *6 (N.D. Ill. Jan. 14, 2000) ("[O]btaining property by fraud or false pretenses can constitute a wrongful taking for purposes of conversion. Indeed, the wrongful taking of property extends to bona fide purchasers for value, without any knowledge of the prior fraudulent act." (citations omitted)); *Dynamic Prod., Inc.*, 2018 WL 1801193, at *4, 8 (where party purchases stolen property, it cannot acquire title in that property, making good faith purchaser defense irrelevant).

Although the Court does not render a definitive interpretation of the scope of § 3.104, at the pleading stage, it concludes that § 3.104 does not preclude Graff's claims. Graff has alleged that the paintings amounted to separate property, over which he had sole management and control. *See* Tex. Fam. Code Ann. § 3.101. Alternatively, by pleading the paintings were his separate property, evidenced through the tracing of funds, § 3.104(a) allows for the presumption that Graff had sole management of the paintings, regardless of the fact that Deborah had possession of them at the time she pawned them to Biltmore.[6] Tex. Fam. Code Ann. § 3.104(a)

---

[6] Leslie Hindman and the Owings Defendants dispute whether Graff has adequately established "evidence of ownership" for purposes of § 3.104(a), but the Court leaves this question for a later date because they

7

(property is in a spouse's sole management to the extent "held in that spouse's name, as shown by muniment, contract, deposit of funds, or other evidence of ownership"). Graff's allegations, in other words, do not allow for the presumption that Deborah had sole management and control over the paintings based on her possession of them at the time she pawned them to Biltmore. *Id.* (sole management presumption arises where property "is in that spouse's possession *and is not subject to such evidence of ownership*" (emphasis added)). And because Graff's allegations do not allow for the presumption that Deborah had sole management of the paintings, Leslie Hindman and the Owings Defendants cannot at this time hide behind the good faith purchaser defense. *See id.* § 3.104(b) (protection to third parties applies only where the property is presumed to be subject to the sole management of the spouse selling the property). Discovery may prove otherwise, but at this stage, the Court must allow Graff's claims for replevin, detinue, conversion, and conspiracy to convert to proceed. The Court addresses the Owings Defendants' additional arguments for dismissal of the unjust enrichment claim below.

## III. Unjust Enrichment

To allege an unjust enrichment claim, Graff must demonstrate that the Owings Defendants have "unjustly retained a benefit to [Graff's] detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (1989); *see also Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011); *Credit Inst. v. Veterinary Nutrition Corp.*, 2003-NMCA-010, ¶ 21, 133 N.M. 248, 62 P.3d 339.[7]

---

do not provide any citation to support the fact that Graff's allegations that the paintings were separate property do not suggest the required evidence of ownership.

[7] Texas does not treat unjust enrichment as a separate claim but rather as a remedy. *See Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 709 n.4 (Tex. App. 2006) ("Unjust enrichment, however, is not an independent cause of action but rather characterizes the result of a failure to make

8

In the third amended complaint, Graff alleges that the Owings Defendants purchased the Higgins painting from Biltmore for $105,000 and sold the painting for $185,000, with the Owings Defendants unjustly retaining the profit from the sale. But Graff also acknowledges the rescission of that sale, with the Owings Defendants currently in possession of the Higgins painting. Because of the unwinding of the sale, Graff's basis for the unjust enrichment claim no longer exists and he has not alleged that the Owings Defendants have obtained funds to which he has a better claim. In his response, Graff argues that the rescission of the sale does not require dismissal of the unjust enrichment claim because the Owings Defendants continue to possess the Higgins painting and so retain a benefit rightfully belonging to Graff. No such theory appears in the third amended complaint, with Graff instead clearly relying on the benefit the Owings Defendants received from their now-rescinded sale of the Higgins painting. The Court does not address this revised theory because Graff cannot amend his complaint by way of arguments made in his response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Therefore, the Court dismisses Graff's unjust enrichment claim against the Owings Defendants.

## IV. Promissory Estoppel

For his promissory estoppel claim against Owings, Graff must allege that (1) Owings made an unambiguous promise to Graff, (2) Graff reasonably and justifiably relied on the promise, (3) Owings could expect and foresee Graff's reliance, and (4) Graff relied on the promise to his detriment. *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004, 141 Ill. 2d 281, 152 Ill. Dec. 308 (1990); *see also Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146 (Tex. App. 2013); *Sholes v. Fernando*, 268 P.3d 1112, 1117 (Ariz. Ct.

---

restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."). The parties do not discuss this difference, likely because the underlying elements are essentially the same.

App. 2011); *Khalsa v. Levinson*, 2003-NMCA-018, ¶ 24, 133 N.M. 206, 62 P.3d 297. Owings argues that Graff has not sufficiently pleaded his detrimental reliance on Owings' promise not to sell the Higgins painting. Graff does allege, in connection with his promissory fraud claim, that he refrained from taking immediate action to recover the Higgins painting based on Owings' promise not to sell the painting. His supplemental affidavit also expands upon this allegation, stating that if Owings had indicated he would sell the painting, Graff would have filed suit immediately to prevent that sale. These suggestions of delay in instituting proceedings to recover the painting suffice, at this stage, to suggest detrimental reliance. *See Balagiannis v. Mavrakis*, No. 08 C 943, 2008 WL 3009925, at *4 (N.D. Ill. Aug. 5, 2008) (finding plaintiffs adequately alleged detrimental reliance based on the delay in instituting proceedings to recover funds). Although Graff likely had to institute suit regardless of whether Owings made the promise not to sell the Higgins painting, that promise may have provided Graff with "a clearer idea of where or how to regain the [painting], and from whom." *Id.* Therefore, to the extent Graff seeks damages arising from this alleged delay in filing suit based on Owings' promise, the Court allows the claim to proceed to discovery. But because the Owings Defendants' sale of the Higgins painting has been reversed and the Owings Defendants have represented that they will retain possession of the painting until resolution of this matter, *see* Doc. 48, Graff's request for enforcement of Owings' promise not to transfer or sell the painting is moot, *see Langlois v. Wells Fargo Bank Nat'l Ass'n*, 581 F. App'x 421, 426 (5th Cir. 2014) (promissory estoppel claim moot where only remedy sought was enforcement of promise to provide loan modification and parties had thereafter signed a loan modification).

### V. Promissory Fraud[8]

Finally, the Court addresses Graff's claim for promissory fraud against the Owings Defendants. Graff contends that Owings misrepresented that he would not transfer or sell the Higgins painting as part of a scheme to defraud Graff and profit from the sale of that painting. Graff claims that Owings made these representations knowing that he had already arranged the sale and with the intent to keep Graff from acting immediately to recover the Higgins painting.

To state a claim for promissory fraud, Graff must establish that the misrepresentation was made "as part of a scheme to defraud," *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009), or, in other words, fraud that "either is particularly egregious or . . . is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy," *Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995). The Owings Defendants argue that Graff has not sufficiently alleged a scheme to defraud, failing to suggest how Owings' promises on two occasions not to sell the painting fit into a larger pattern of deception. Indeed, Graff does not include any other actions by the Owings Defendants that reinforced Owings' representations, nor does he claim that the Owings Defendants frequently engaged in such conduct.[9] As a result, Graff's pleading falls short of the high bar required to suggest promissory fraud. *See Sols. Team, Inc. v. Oak St. Health, MSO, LLC*, No. 17-cv-1879, 2019 WL 462481, at *6 (N.D. Ill. Feb. 6, 2019) ("Plaintiffs cannot establish a scheme to defraud merely by alleging that defendants made the same representations multiple times."); *Nat'l Painting, Inc. v. PPG Architectural Finishes, Inc.*, No. 14

---

[8] The parties appear to agree that Illinois law controls here, failing to provide parallel citations to any other state's law.

[9] In fact, in the affidavit attached to his response, Graff undermines any suggestions of such trickery or deception, claiming that he had previously worked with Owings on many other art transactions and that Owings only changed his position about selling the Higgins painting after consulting with lawyers and others as to whether he had legal title to the Higgins painting. *See* Doc. 114 at 19–20.

C 8054, 2015 WL 1593008, at *4 (N.D. Ill. Apr. 1, 2015) (repetition of fraudulent misrepresentations, without more, does not adequately allege a scheme to defraud); *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 960–62 (N.D. Ill. 2006) (plaintiff did not sufficiently allege a scheme to defraud where he did not claim that defendants "engaged in other acts of trickery compounding the initial misrepresentations" or "that they perpetrate this type of fraud as a regular practice, or on any grand scale"), *superseded on other grounds by statute*, 735 Ill. Comp. Stat. 5/2-2201. Therefore, the Court dismisses Graff's promissory fraud claim.

## VI. Dismissal Without Prejudice

Graff requests leave of the court to amend any claims that the Court finds subject to dismissal. Although Graff has already filed four iterations of his complaint, the Court has not previously addressed the specific arguments on which it finds dismissal of the unjust enrichment and promissory fraud claims appropriate. The Court therefore will allow Graff one additional opportunity to properly plead these claims, but the Court cautions Graff to consider the need to do so in light of the Court allowing his remaining claims to proceed and the potential for another round of briefing on the viability of the dismissed claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Owings Defendants' motions to dismiss [102], and denies Leslie Hindman's motion to dismiss [105]. The Court dismisses Graff's claims for unfair enrichment (Count VIII) and promissory fraud (Count VII) without prejudice.

Dated: August 9, 2019

_____
SARA L. ELLIS
United States District Judge